UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERRA MACIAS-HATCH,<br><br>                          Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security<br>Administration,<br><br>                          Defendant. | NO:  1:14-CV-3079-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 17.  Plaintiff is represented by D. James Tree. Defendant is represented by Diana Andsager.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited:  the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

1   court "may not reverse an ALJ's decision on account of an error that is harmless."

2   *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's]

3   ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).

4   The party appealing the ALJ's decision generally bears the burden of establishing

5   that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

6                    FIVE-STEP SEQUENTIAL EVALUATION PROCESS

7          A claimant must satisfy two conditions to be considered "disabled" within

8   the meaning of the Social Security Act.  First, the claimant must be "unable to

9   engage in any substantial gainful activity by reason of any medically determinable

10   physical or mental impairment which can be expected to result in death or which

11   has lasted or can be expected to last for a continuous period of not less than twelve

12   months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

13   impairment must be "of such severity that he is not only unable to do his previous

14   work[,] but cannot, considering his age, education, and work experience, engage in

15   any other kind of substantial gainful work which exists in the national economy."

16   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

17          The Commissioner has established a five-step sequential analysis to

18   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R.

19   §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).  At step one, the Commissioner

20   considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2   Commissioner must find that the claimant is not disabled.  20 C.F.R.

3   §§ 404.1520(b), 416.920(b).

4        If the claimant is not engaged in substantial gainful activities, the analysis

5   proceeds to step two.  At this step, the Commissioner considers the severity of the

6   claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

7   claimant suffers from "any impairment or combination of impairments which

8   significantly limits [his or her] physical or mental ability to do basic work

9   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

10  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11  however, the Commissioner must find that the claimant is not disabled.  *Id.*

12       At step three, the Commissioner compares the claimant's impairment to

13  several impairments recognized by the Commissioner to be so severe as to

14  preclude a person from engaging in substantial gainful activity.  20 C.F.R.

15  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe as or more

16  severe than one of the enumerated impairments, the Commissioner must find the

17  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

18       If the severity of the claimant's impairment does meet or exceed the severity

19  of the enumerated impairments, the Commissioner must pause to assess the

20  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on August 8, 2007. Tr. 108, 109, 273–75, 276–80. Plaintiff's claims were denied initially and upon reconsideration. Tr. 135–38, 144–47, 154–55, 157–58. Following hearings in June and November 2010, an ALJ denied Plaintiff's claims on November 15, 2010. Tr. 36–45, 46–79, 115–123. The Appeals Council reviewed this decision and remanded the matter on March 16, 2012, for additional proceedings. Tr. 128–31.

A new hearing was held before a different ALJ on August 28, 2012. Tr. 80–107. The ALJ issued a decision denying Plaintiff's claims on September 27, 2012. Tr. 11–30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 28, 2004. Tr. 14. At step two, the ALJ found that Plaintiff had the following severe impairments: personality disorder;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

posttraumatic stress disorder; panic disorder; affective disorder; seizure disorder; diverticulosis; and obesity.  *Id.*  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 15.  The ALJ then concluded that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:  the claimant can never climb ladders, ropes, or scaffolds; the claimant can frequently balance; the claimant should avoid hazardous working conditions such as proximity to unprotected heights, moving machinery, sharp objects, open water, and hot surfaces; the claimant is limited to tasks that can be learned in one year or less; the claimant is able to engage in occasional public interaction; and the claimant is able to adapt to a predictable work routine with no more than occasional changes.

Tr. 17.  The ALJ found, at step four, that Plaintiff was unable to perform past relevant work.  Tr. 28.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy which Plaintiff can perform in representative occupations such as small product assembly, housekeeper, and hand packager.  Tr. 29.  On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act.  Tr. 30.

The Appeals Council denied Plaintiff's request for review on April 16, 2014, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  Tr. 1–5; 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

ISSUES

Plaintiff raises the following issues for review:

(1) Whether the ALJ properly evaluated the credibility of Plaintiff's subjective complaints.  ECF No. 13 at 14–18.

(2) Whether the ALJ properly assessed Plaintiff's RFC.  Specifically, whether the ALJ properly weighed certain medical opinions and whether the ALJ properly acknowledged the effect of the possible psychogenic nature of Plaintiff's seizures.  *Id.* at 9–12.

(3) Whether the ALJ properly evaluated Plaintiff's ability to participate in jobs in the national economy at step five.  *Id.* at 18–20.

DISCUSSION

A. Plaintiff's Credibility

Plaintiff contends that the ALJ erred by rejecting the full extent of Plaintiff's subjective complaints about the severity of the symptoms caused by her impairments.  ECF No. 13 at 17–18.  Plaintiff argues that "the ALJ offers a number of rationales for finding the claimant not credible, but these reasons do not meet the Ninth Circuit's clear and convincing standard."  *Id.* at 17.  Defendant contends the ALJ provided legally sufficient reasons to reject Plaintiff's testimony.  ECF No. 17 at 12–15.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1    In social security proceedings, a claimant must prove the existence of a

2    physical or mental impairment with "medical evidence consisting of signs,

3    symptoms, and laboratory findings." 20 C.F.R. §§ 416.908, 416.927. A claimant's

4    statements about his or her symptoms alone will not suffice. 20 C.F.R. §§

5    416.908, 416.927. Once an impairment has been proven to exist, an ALJ "may not

6    reject a claimant's subjective complaints based solely on a lack of objective

7    medical evidence to fully corroborate the alleged severity of [the symptom]." *See*

8    *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the

9    impairment "could reasonably be expected to produce [the symptom]," the

10   claimant may offer a subjective evaluation as to the severity of the impairment. *Id.*

11   at 344 (citation omitted). This rule recognizes that the severity of a claimant's

12   symptoms "cannot be objectively verified or measured." *Id.* at 347 (citation

13   omitted).

14       However, an ALJ may conclude that the claimant's subjective assessment is

15   unreliable, so long as the ALJ makes "a credibility determination with findings

16   sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not

17   arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958

18   (9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may

19   find the claimant's allegations of severity to be not credible, the adjudicator must

20   specifically make findings which support this conclusion."). In making such a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

determination, the ALJ may consider, *inter alia*:  (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition.  *Thomas*, 278 F.3d at 958.  If there is no evidence of malingering, the ALJ's reasons for not crediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms.  Tr. 19. However, the ALJ did not credit Plaintiff's testimony about the severity of her symptoms.  *Id.*  The ALJ did not conclude there was evidence of malingering, and therefore the Court must determine whether the ALJ provided specific, clear and convincing reasons not to credit Plaintiff's testimony of the limiting effects of her impairments.  *Chaudhry*, 688 F.3d at 672.  The Court concludes that the ALJ did provide specific, clear and convincing reasons which are supported by substantial evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

The ALJ provided a number of reasons for concluding that Plaintiff's testimony was not credible.  First, the ALJ noted that Plaintiff has made inconsistent statements regarding both her substance abuse and her seizures which diminish her credibility.  Tr. 20–23.  The ALJ cited many occasions in which Plaintiff made inconsistent reports to health care providers about her history of substance abuse.  Tr. 20–21.  For example, in September 2010 Plaintiff report to Emma Joan H. Billings, Ph.D., that she had not consumed alcohol in approximately a year, but "[i]n the past she was consuming a half-gallon of vodka every two days."  Tr. 632.  This is inconsistent with Plaintiff's statement to Jay M. Toews, Ed.D., in August 2008 that Plaintiff quit drinking when she began having seizures sometime around the year 2001.[1]  Tr. 492.  The ALJ also noted Plaintiff's inconsistent statements regarding the last time she used drugs, stating variably that this was in 2007 (Tr. 100), 2008 (Tr. 72, 73), or 2010 (Tr. 632).  Tr. 21.[2]

---

[1] It is not entirely clear from the record when Plaintiff began experiencing seizures. Plaintiff told Dr. Toews she was first diagnosed in 2001.  Tr. 492.  Dr. R. Richard Sloop notes Plaintiff told him she was first treated for seizures in 1998.  Tr. 555.

[2] Plaintiff contends that Dr. Billings "misdocumented" the 2010 substance use.  Tr. 100.  Even were that true, Plaintiff still testified inconsistently at her first hearing that she last used methamphetamines in 2008 and at her second hearing that she

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    The ALJ further cited many inconsistencies in Plaintiff's statements

2    regarding her seizures.  Tr. 21–23.  For example in July 2010, Plaintiff reported to

3    a neurologist that she was experiencing ongoing seizures at the rate of twice a

4    month.  Tr. 640.  However, in August 2011, Plaintiff told a different physician that

5    she had not experienced a seizure since September 2009.  Tr. 742.

6    An ALJ may properly consider inconsistent statements in evaluating the

7    credibility of a claimant's statements about the severity of her impairments.  *See*

8    *Thomas*, 278 F.3d at 958–59; *see also* SSR 96-7p, 1996 WL 374186 at *5 (July 2,

9    1996) ("One strong indication of the credibility of an individual's statements is

10   their consistency . . . .  The adjudicator must compare statements made by the

11   individual in connection with his or her claim for disability benefits with

12   statements he or she made under other circumstances, when such information is in

13   the case record.").  Here, the ALJ noted the many inconsistencies in Plaintiff's

14   statements made both to medical providers and during her hearings, and properly

15   considered those inconsistencies in evaluating Plaintiff's credibility.

16

17   last used methamphetamines in 2007.  *Compare* Tr. 72, *with* Tr. 100.  Plaintiff was

18   even uncertain in the first hearing whether she last used in 2008 or 2009.  Tr. 72.

19   Whether Plaintiff is being untruthful or not, her testimony is nevertheless

20   unreliable because of her inability to testify consistently.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

Second, the ALJ cited numerous portions of the record that indicated Plaintiff had "not been compliant with taking prescribed medications, adhering to prescribed treatment, or attending appointments." Tr. 20. For example, on multiple occasions Plaintiff did not follow through with scheduled evaluations or lab testing. *See* Tr. 413, 426–27, 458, 528. The ALJ also noted instances where Plaintiff reported she was not taking her prescribed seizure medication. Tr. 22, 412, 458, 475, 493, 527. Plaintiff stated on one occasion that she stopped taking two of her medications because of adverse side effects. Tr. 21, 375, 527. But as the ALJ noted, Plaintiff reported elsewhere that she quit these medications because they were ineffective or because she could not afford them. Tr. 21, 22, 397, 458. The ALJ also noted that Plaintiff was noncompliant with proscribed antibiotics—to which there is no indication she suffered adverse effects. Tr. 20, 527. Such inadequately explained failures to follow prescribed courses of treatment "can cast doubt on the sincerity of the claimant's [symptom] testimony." *Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989).[3]

---

[3] Plaintiff contends, citing *Regennitter v. Comm'r of Social Sec.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999), that her "mental health impairments inhibit her ability to seek treatment." ECF No. 13 at 14. In *Regennitter*, the Ninth Circuit criticized the practice of "chastis[ing] one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* (citation omitted). However, Plaintiff's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

Third, the ALJ cited Plaintiff's criminal history, including unlawful issuance of bank drafts, as another factor supporting an adverse credibility finding.  Tr. 21. An ALJ may consider the claimant's reputation for truthfulness as a relevant aspect of evaluating credibility.  *Thomas*, 278 F.3d at 958.  Passing bad checks is a crime involving fraud, properly considered in assessing credibility.  *See, e.g.*, *State v. Ben-Neth*, 34 Wash.App. 600, 606 (1983) ("for unlawful issuance of checks, the trier of fact must find the defendant wrote the check with intent to defraud, knowing he had insufficient funds in his account").  The ALJ did not place undue emphasis on Plaintiff's criminal history in assessing Plaintiff's credibility.  The ALJ's credibility assessment was founded predominantly upon Plaintiff's inconsistent statements and noncompliance with prescribed treatment.

Finally, the ALJ observed that Plaintiff's "testimony that she stays at home is contradicted by evidence elsewhere in the record that she engages in a range of activities."  Tr. 20.  There are two grounds for using daily activities in evaluating a

---

actions in this case go beyond mere failure to seek treatment.  Plaintiff in fact sought treatment on many occasions, but she then failed to follow the advice and directives of her medical providers.  The Court has not found, nor has Plaintiff pointed to, any evidence in the record demonstrating that Plaintiff's failure to follow her prescribed treatment was influenced by her mental impairments.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

claimant's credibility.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  First, the daily activities may simply contradict a claimant's other testimony.  *Id.*; *Molina*, 674 F.3d at 1113 ("whether the claimant engages in daily activities inconsistent with the alleged symptoms") (citation omitted).  Second, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.  *Orn*, 495 F.3d at 639.  Here, the ALJ cited Plaintiff's activities of attending church four to five days a week, walking to see a friend several times a week, and her self-reports that she is getting out and doing more, as contradicting Plaintiff's claimed extreme aversion to leaving the house.  Tr. 20, 626, 679, 693, 709.  As with Plaintiff's criminal history, the ALJ's reference to daily activities lends support to a credibility determination predominantly founded on Plaintiff's inconsistent statements and noncompliance.

        In sum, the ALJ properly relied upon inconsistencies in Plaintiff's statements and her noncompliance with prescribed treatment to evaluate Plaintiff's credibility.  While the brief reference to Plaintiff's daily activities and criminal record do not themselves meet the standard alone, the ALJ's full decision provides specific, clear, and convincing reasons sufficient for this Court to conclude that the adverse credibility determination is supported by substantial evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

B. RFC Evaluation

Plaintiff contends generally that the "ALJ's residual function capacity assessment fails to accurately describe the nature and symptoms of [Plaintiff's] mental health conditions." ECF No. 13 at 7. Specifically, Plaintiff contends that the ALJ failed to "consider the effect of psychogenic seizures" on Plaintiff's RFC. *Id.* at 14. Plaintiff also contends the ALJ erred in rejecting the opinions of Emma John H. Billings, Pd.D., and Donna Veraldi, Ph.D. *Id.* at 9–13. The Court considers each argument in turn.

Plaintiff argues that the ALJ failed to consider the effect of psychogenic seizures on Plaintiff's RFC. ECF No. 13 at 14. Specifically, Plaintiff contends that the severity of her seizures is greater if they have a psychological component. ECF Nos. 13 at 13; 19 at 4. The Court is not persuaded by Plaintiff's argument.

First, the ALJ noted that medication for Plaintiff's seizures has been effective and that she was not having seizures now that she was on Topomax. Tr. 26. The ALJ also noted that if the seizures were in fact psychogenic, they were also treatable with psychiatric care. *Id.* "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Second, the ALJ included safety precautions in Plaintiff's RFC to avoid injury in the case that Plaintiff does experience a seizure while on the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1    job.  Tr. 17 ("[T]he claimant should avoid hazardous working conditions such as

2    proximity to unprotected heights, moving machinery, sharp objects, open water,

3    and hot surfaces . . . ."). Whether Plaintiff's seizures are psychogenic or epileptic,

4    the ALJ properly considered their existence and severity, and afforded appropriate

5    limitations in Plaintiff's RFC.

6        Plaintiff also argues that the ALJ failed to properly consider the opinion of

7    Emma John H. Billings, Pd.D., who examined Plaintiff in September 2010.  ECF

8    Nos. 13 at 9–12; 19 at 3–4.  The ALJ assigned this opinion some weight,

9    concluding that the "severity of [Dr. Billings'] finding restricting any public

10   contact is inconsistent with the overall evidence of record." Tr. 26.  For instance,

11   Donna Veraldi, Ph.D., disagreed with the conclusions reached by Dr. Billings.  *See*

12   Tr. 25, 67–68.  "If a treating or examining doctor's opinion is contradicted by

13   another doctor's opinion, an ALJ may only reject it by providing specific and

14   legitimate reasons that are supported by substantial evidence." *Bayliss v.*

15   *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d

16   821, 830-31 (9th Cir. 1995)).  As a contradicted opinion, the Court must determine

17   whether the ALJ provided specific and legitimate reasons supported by substantial

18   evidence in assigning Dr. Billings' opinion limited weight.

19       It is the ALJ's duty to resolve conflicting medical opinions. *Thomas*, 278

20   F.3d at 956.  Plaintiff disagrees with the ALJ's conclusions in this case and argues

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

1    that the ALJ "provided no specific references to inconsistencies that actually

2    [were] applied by Dr. Billings in arriving at her ultimate conclusions.  Without

3    such a statement, these inconsistencies are nothing more than minor points

4    intended to justify a decision the ALJ has already made."  ECF No. 13 at 10–11.

5    However, the ALJ set out a detailed and thorough examination of the record and

6    conflicting opinions, made specific findings, and addressed inconsistencies

7    between Dr. Billings' conclusions and the treatment notes of other medical

8    providers.  Tr. 24–28.  The ALJ's resolution of the conflicting opinions is

9    reasonable and must be upheld.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359

10   F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if

11   supported by inferences reasonably drawn from the record . . . and if evidence

12   exists to support more than one rational interpretation, we must defer to the

13   Commissioner's decision." (citation omitted)).  The ALJ provided specific and

14   legitimate reasons to assign limited weight to the functional assessment of Dr.

15   Billings.

16          Finally, Plaintiff argues briefly that the ALJ failed to provide proper reasons

17   to reject the opinion of Donna Veraldi, Ph.D, the testifying medical expert at

18   Plaintiff's November 2010 hearing.  ECF No. 13 at 9.  The ALJ did not reject Dr.

19   Veraldi's testimony, but instead gave it "significant weight" and incorporated Dr.

20   Veraldi's conclusions into Plaintiff's RFC.  Tr. 25, 58–59, 60 ("If it was work I

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

think she would be limited to simple, routine, repetitive because of the working memory problems and the attention and concentration problems, yes.  And there are some limitations in her social interaction.  But yes, based on what I have, I would not see anything that would take her out of [maintaining full time work on a regular and continuing basis in a competitive work environment].").  Plaintiff has not shown error in the ALJ's reasons to reject Dr. Veraldi's opinion because the ALJ did not in fact reject the opinion.

However, as Defendant concedes, there is one aspect of Dr. Veraldi's opinion that is not expressly incorporated into Plaintiff's RFC.  ECF No. 17 at 17. During Plaintiff's hearing, Dr. Veraldi concluded that Plaintiff had marked difficulties in maintaining concentration, persistence, and pace, and in understanding and remembering complex instructions.  Tr. 25, 58, 59.  Based upon these limitations, Dr. Veraldi opined that Plaintiff's work ability was "limited to simple, routine, repetitive" tasks.  Tr. 25, 60.  While the ALJ gave this opinion significant weight, the RFC articulated by the ALJ stated Plaintiff could perform "tasks that can be learned in one year of less."  Tr. 17, 25.  This, Defendant concedes, was error given Dr. Veraldi's specific opinion offered at the hearing. *See* ECF No. 17 at 17.[4]

---

[4] In her briefing, Defendant essentially argues the inverse of this error, contending that the ALJ erred in assigning significant weight to Dr. Veraldi's opinion given

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1   Assuming that the ALJ erred by not expressly limiting Plaintiff's RFC to

2   "simple, repetitive tasks" instead of "tasks that can be learned in one year or less,"

3   the Court must evaluate whether this error was harmful.  *See Molina*, 674 F.3d at

4   1111 ("[W]e may not reverse an ALJ's decision on account of an error that is

5   harmless.").  To show this error was harmful, Plaintiff must demonstrate that it was

6   consequential in the ALJ's ultimate nondisability determination.  *See id.* at 115

7   ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate

8   nondisability determination." (internal quotation marks omitted)).  In this case, the

9   Court must determine whether a properly articulated RFC would have nevertheless

10  resulted in a finding that Plaintiff was not disabled.  To make this determination,

11  the Court proceeds to evaluate the ALJ's step-five analysis and whether the

12  erroneous statement in Plaintiff's RFC was consequential to the vocational expert's

13  conclusions and thus the ALJ's ultimate nondisability finding.

14  _____

15  the subsequent statement in the RFC.  However, it is clear that the ALJ gave

16  significant weight to Dr. Veraldi's opinion and then proceeded to apply that

17  opinion in developing Plaintiff's RFC.  The ALJ gave no reason to discount this

18  particular aspect of Dr. Veraldi's overall opinion, and the Court therefore reviews

19  the ALJ's decision on the basis that the ALJ erred in not expressly limiting

20  Plaintiff to simple, routine tasks as opined by Dr. Veraldi and credited by the ALJ.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

C. Vocational Expert Hypothetical

At step five, the burden shifts to the Commissioner to show that a claimant can do other substantial gainful activity considering her age, education, and work experience.  *See Beltran*, 700 F.3d at 389.  "There are two ways for the Commissioner to meet [her] Step Five burden:  (1) the testimony of a [vocational expert]; or (2) by reference to the Medical-Vocational Guidelines . . . .  Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines."  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citations omitted).  In obtaining vocational expert testimony, the ALJ must pose to the expert "a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations."  *Id.* at 1163.  Thus, the ALJ need not include limitations in the hypothetical that the ALJ has concluded are not supported by substantial evidence in the record.

Plaintiff contends that the hypothetical the ALJ posed to the vocational expert was erroneous because it did not contain Dr. Billings' conclusions of Plaintiff's inability to work in a public setting, her marked limitations in attention and concentration, or her anxiety around men.  ECF No. 13 at 19.  As discussed previously, the ALJ properly evaluated and gave limited weight Dr. Billing's opinion of the severity of these limitations.  As such, the ALJ was not required to include those specific limitations in the hypothetical posed to the vocational expert.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1   Plaintiff has identified no error in the ALJ's exclusion of Dr. Billing's specific

2   opinions from the hypothetical posed.

3       Plaintiff also contends that the ALJ failed to properly factor in her seizures.

4   ECF No. 13 at 20.  The ALJ did incorporate certain seizure-related limitations into

5   the hypothetical.  Tr. 104 ("The individual should avoid hazardous working

6   conditions such as proximity to unprotected heights, moving machinery, sharp

7   objects, open water, and hot surfaces.").  The ALJ rejected further limitations

8   because they were not supported by substantial evidence in the record.  Tr. 28.

9   Plaintiff has shown no error in the ALJ's exclusion of greater seizure-related

10  limitations.

11      As discussed above, however, the ALJ presented a partially erroneous

12  hypothetical to the vocational expert when the ALJ framed Plaintiff's RFC as

13  including the ability to perform "tasks that can be learned in one year or less."  Tr.

14  104.  The Court must determine whether this inclusion was consequential to the

15  vocational expert's ultimate conclusion that Plaintiff could perform relevant work.

16      Defendant states that a limitation to "[j]obs that can be learned in one year or

17  less yields a Specific Vocational Preparation, or 'SVP' level of 5," and that such

18  jobs "are classified as 'skilled' jobs."  ECF No. 17 at 17.  Defendant then admits

19  that "skilled work is inconsistent with a limitation to simple, repetitive tasks."  *Id.*;

20  *see also* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) ("Using the skill level

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.").

Nevertheless, the relevant jobs identified by the vocational expert were not skilled positions.  The vocational expert identified three jobs which Plaintiff could perform:  small product assembly, housekeeper, and hand packager.  Tr. 104.  The Dictionary of Occupational Titles ("DOT") states that each of these jobs requires a SVP of 2, meaning that the employee must be able to learn the job "beyond short demonstration up to and including 1 month" of training.  DICTIONARY OF OCCUPATIONAL TITLES [DOT a/k/a DICOT] §§ 332.687-014, 559.687-074, 739.687-030 (4th ed. 1991), *available at* 1991 WL 672783, 1991 WL 683797, 1991 WL 680180; *see also* 20 C.F.R. § 404.1568 ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . .  [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.").

Each identified job requires only a general learning ability in the "[l]owest 1/3 excluding [b]ottom 10%."  DICOT §§ 332.687-014, 559.687-074, 739.687-030.  Each job requires only that the employee "apply commonsense understanding to carry out" either "simple one- or two-step instructions" (house cleaner) or "detailed but uninvolved written or oral instructions" (small product assembler and

1    hand packager).  *Id.* §§ 332.687-014, 559.687-074, 739.687-030.  Finally, each job

2    involves "[p]erforming REPETITIVE or short-cycle work."  *Id.* §§ 332.687-014,

3    559.687-074, 739.687-030 (emphasis in original).

4         "The DOT creates a rebuttable presumption as to the job classification."

5    *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008); s*ee also Pinto v.*

6    *Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is

7    generally performed is usually the Dictionary of Occupational Titles."); SSR 00-4p

8    at *2 ("In making disability determinations, we rely primarily on the DOT . . . for

9    information about the requirements of work in the national economy.  We use

10   these publications at steps 4 and 5 of the sequential evaluation process.").  The

11   vocational expert's testimony identified jobs in the DOT that were limited to

12   simple, repetitive tasks.  Based upon the defined requirements of the identified jobs

13   and the ALJ's specific findings of Plaintiff's limitations, the ALJ's misstatement of

14   Plaintiff's ability to perform "tasks that can be learned in one year or less" had no

15   consequence on the ALJ's ultimate determination that there exist jobs which

16   Plaintiff could perform.

17        In short, crediting the entirety of Dr. Veraldi's testimony regarding

18   Plaintiff's limitations, including an express limitation to "simple, repetitive tasks,"

19   the jobs identified by the vocational expert are ones which Plaintiff is nevertheless

20   capable of performing.  Plaintiff has not demonstrated that the failure to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

1  specifically incorporate a reference to "simple, repetitive tasks" was consequential

2  to the ALJ's ultimate determination of non-disability.  As such, the ALJ's error

3  was harmless and the decision must be affirmed.

4  **ACCORDINGLY, IT IS HEREBY ORDERED:**

5      1.  Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

6      2.  Defendant's Motion for Summary Judgment (ECF No. 17) is

7          **GRANTED**.

8      The District Court Executive is hereby directed to file this Order, enter

9  Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

10      **DATED** June 8, 2015.



THOMAS O. RICE
United States District Judge